# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF CALIFORNIA
# SAN JOSE DIVISION

| | |
|---|---|
| PHP INSURANCE SERVICE, INC., et al., Plaintiffs, v. GREENWICH INSURANCE COMPANY, Defendant. | Case No.  15-cv-00435-BLF **ORDER GRANTING PLAINTFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT AND GRANTING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** [Re: ECF 26, 27] |

This is a declaratory judgment action to determine coverage under an insurance policy issued by defendant Greenwich Insurance Company ("Greenwich"), which insures plaintiffs PHP Insurance Service, Inc., PHP Group, Inc., and Trung Tran (collectively, "PHP") against liability for certain "Wrongful Employment Acts." Before the Court are the parties' motions for summary judgment. Greenwich Mot., ECF 26; PHP Mot., ECF 27. The Court heard oral argument on these motions on June 18, 2015. For the reasons stated herein, Greenwich's motion for summary judgment is GRANTED IN PART and DENIED IN PART. PHP's cross motion for partial summary judgment is GRANTED.

## I. BACKGROUND

### A. The Underlying Action

On November 19, 2012, Huong Ho and Kevin Nguyen filed a class action lawsuit against PHP in the Superior Court for the State of California, Santa Clara County styled *Huang Ho and Kevin Nguyen v. PHP Group Inc.; PHP Insurance Service, Inc.; Trung Tran; and Does 1-15*, Case No. 112CV236349 ("*Ho* Action"). The plaintiffs in the *Ho* Action alleged violations of California state labor regulations including the failure to provide accurate itemized wage statements as required by California Labor Code ("CLC") § 226, as well as violations of other sections of the

CLC requiring the payment of overtime, provision of adequate meal and rest periods, maintenance of payroll records, and compensation for vested vacation hours. Stipulation to Facts for Purposes of Summ. J. (hereinafter "J.A."), ECF 25, Exh. B (*Ho* Compl.).

The introductory paragraph of the complaint in the *Ho* Action stated that "Defendants run [PHP] as a taskmaster over immigrant and Vietnamese workers, consisting of Plaintiffs and the class of employees they seek to represent." *Ho* Compl. at 1. The "Factual Background" section expounded upon this theme:

> [PHP conducts its] business primarily in Vietnamese-speaking communities of Santa Clara County and surrounding cities, including San Jose. Accordingly, Plaintiffs and the Class Members are predominantly Vietnamese-speaking individuals. Some of the employees are recent immigrants from Vietnam or are new graduates who are unsophisticated in employment and labor rights. Defendants routinely entered into oral employment contracts with Plaintiffs and Class members. Plaintiffs and Class Members did not receive employment handbooks at the time of hiring or otherwise that contained the internal policies of PHP Insurance. Defendants purposefully hire recent immigrant workers to improperly take advantage of their lack of knowledge regarding labor and employment rights.

*Id.* ¶ 14. The gravamen of the complaint was misclassification, as the plaintiffs alleged that they and the class members were never paid overtime by PHP because "all employees were misclassified as exempt employees." *Id.* ¶ 23. The plaintiffs in the *Ho* Action further alleged that they were "pressured into staying to service clients even during meal breaks" and that "Employees who were not available to assist customers were later berated by management for neglecting their duties." *Id.* ¶ 19. Mr. Tran purportedly maintained strict control over every aspect of PHP's insurance operation. The *Ho* plaintiffs alleged that they were "discouraged from conversations with one another if the conversation is not directly related to work. *Id.* ¶ 25. "In addition to controlling the Plaintiffs and the Class Members' schedules, work, and communication, [PHP] also required that some employees change their Vietnamese names to American names that were selected by Defendant Tran." *Id.*

On January 18, 2013, the *Ho* plaintiffs amended their complaint to add a claim under California's Private Attorneys General Act ("PAGA"). The remainder of the complaint was left unchanged. J.A. Exh. C. The *Ho* parties reached a proposed class wide settlement, which

received preliminary approval from the court in July 2013. Compl. ¶ 18; J.A. Exh. E. The settlement was ultimately given final approval on October 18, 2013.[1] Stipulation re Exhibit, ECF 39, Exh. 1 (State Court's "Order, Judgment, and Decree Granting Final Approval of Class Action Settlement" entered in the *Ho* Action).

### B. The Policy

This action concerns Employment Practices Insurance policy No. ABD9774242-00 issued by Greenwich to PHP and effective December 26, 2011 through December 26, 2012. J.A. Exh. A ("Policy").[2] The Policy provides that Greenwich "will pay, on behalf of the Insureds, Loss in excess of the applicable Retention arising from any Employment Claim first made against an Insured during the Policy Period (or Extended Reporting Period, if applicable) for a Wrongful Employment Act." *Id.* at 1. An employment claim under the policy refers to "any written demand or notice received by an Insured alleging that an Insured has committed a Wrongful Employment Act." *Id.* at 2-3.

The Policy lists thirteen actual or alleged actions that constitute covered "Wrongful Employment Acts." Such covered acts include Discrimination, Harassment, and breaches of written or oral employment contracts or implied employment contracts. *Id.* at 4. Of particular relevance to the issues before the Court, the Policy defines "Discrimination" as:

> 1. the termination of an employment relationship;
> 2. a demotion or the failure to hire or promote any individual; or
> 3. the segregation, classification, or modification of any term or condition of employment of any Employee;
>
> because of race, color, creed, religion, age, national origin [and other protected classes or characteristics].

*Id.* at 2. "Harassment" is defined in relevant part as "harassing conduct of a non-sexual nature

---

[1] At some point prior to settlement, the *Ho* plaintiffs dismissed PHP Group, Inc. from the underlying action. Compl. ¶ 16. Thus, the settlement in the *Ho* Action bound only plaintiffs PHP Insurance Service, Inc. and Trung Tran. Furthermore, the insurance policy at issue in this case appears to have been issued to PHP Insurance Service, Inc., extending coverage to that company as well as its members, directors, and employees. It is unclear from the record before the Court whether PHP Group, Inc. is an insured under the policy and the parties have not addressed this issue in their briefing.

[2] Citations to the "Policy" refer to the document beginning at page 13 of 104 at ECF 25-1.

1  which creates a work environment with the Company that interferes with an Employee's job
2  performance, or creates an intimidating, hostile or offensive working environment." *Id.* at 3.
3      Furthermore, certain types of claims are excluded from coverage under the Policy.
4  Specifically, Section IV of the Policy states:

> The Insurer shall not be liable to make any payment for Loss in connection with any Claim based upon, arising out of, directly or indirectly resulting from, in consequence of, or in any way involving:
> . . .
> H. any actual or alleged violation of the Employee Retirement Income Security Act of 1974 ("ERISA"), any state workers' compensation or disability benefits law, the Fair Labor Standards Act (except the Equal Pay Act), the National Labor Relations Act, the Worker Adjustment and Retraining Notification Act, the Consolidated Omnibus Budget Reconciliation Act of 1985, the Occupational Safety and Health Act, or any rules or regulations promulgated thereunder, or similar provisions of any federal, state or local statutory law or common law; provided that this exclusion shall not apply to the part of any Employment Claim alleging Retaliation with respect to an Employee's exercise or attempted exercise of his or her rights under any of the foregoing acts or laws.

*Id.* at 5.

### C. Allegations in this Action

As alleged in the Complaint and demonstrated through the documents submitted with the parties' motions for summary judgment, PHP were defendants in the *Ho* Action, which was filed within the coverage period of the Policy. Compl. ¶ 15; J.A. Exh. B.

PHP tendered notice of the *Ho* Action to Greenwich on November 27, 2012. Greenwich denied coverage through ABA Insurance Services Inc. ("ABA") on December 6, 2012. J.A. Exh. F. In response, PHP sent a rebuttal letter on March 8, 2013 enclosing additional information about the underlying action, including a the record of an interview with a former PHP employee made by the Employment Development Department ("EDD Statement") and a "Joint Initial Status Conference Class Action Response Statement" ("Joint CMS") from the *Ho* Action. *Id.* Exh. G. Greenwich again denied coverage on April 30, 2013, this time through counsel. *Id.* Exh. H. PHP sought reconsideration and indemnification on June 19, 2013, which was again rebuffed by Greenwich's counsel on July 17, 2013. *Id.* Exhs. I, J. In a final bid for indemnification, PHP emailed Greenwich on July 25, 2013 and Greenwich issued a formal response (another denial) on

September 8, 2014. *Id.* Exhs. K, L.

Following this refusal, PHP filed the complaint in this action on January 30, 2015 seeking a declaration that Greenwich had a duty to defend (First Claim) and a duty to indemnify (Second Claim) PHP against the *Ho* Action and furthermore asserting claims for breach of contract (Third Claim), breach of the implied covenant of good faith and fair dealing (Fourth Claim), and violation of California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200, *et seq.* (Fifth Claim). The parties then filed the instant motions for summary judgment on a stipulated evidentiary record.

## II.   LEGAL STANDARD

Federal Rule of Civil Procedure 56 governs motions for summary judgment. Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (citing Fed. R. Civ. P. 56(c)).

The moving party seeking summary judgment bears the burden of showing there is no material factual dispute. Once the moving party has satisfied this initial burden, the non-moving party must then "identify with reasonable particularity the evidence that precludes summary judgment." *Keenan v. Allan*, 91 F.3d 1275, 1279 (9th Cir. 1996); *see also Schneider v. TRW, Inc.*, 938 F.3d 986, 991 (9th Cir. 1990). It is not the duty of the district court to "to scour the record in search of a genuine issue of triable fact." *Keenan*, 91 F.3d at 1279 (quoting *Richards v. Combined Ins. Co.*, 55 F.3d 247, 251 (7th Cir. 1995)). Moreover, the court makes no credibility determinations and does not weigh the evidence. "The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 254 (1986); *see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). For a court to find that a genuine dispute of material fact exists, "there must be enough doubt for a reasonable trier of fact to find for the [non-moving party]." *Corales v. Bennett*, 567 F.3d 554, 562 (9th Cir. 2009). If the non-moving party fails to make this showing, the moving party is entitled to summary judgment. *Celotex*, 477 U.S. at 323.

1    The filing of cross-motions for summary judgment or partial summary judgment does not
2    mean that the material facts are undisputed, and the denial of one motion does not necessarily
3    require the granting of the other. *See, e.g., Regents of Univ. of Calif. v. Micro Therapeutics, Inc.*,
4    507 F. Supp. 2d 1074, 1077-78 (N.D. Cal. 2007) (citing *Atl. Richfield Co. v. Farm Credit Bank of*
5    *Wichita*, 226 F.3d 1138, 1147 (10th Cir. 2000). The cross-motions are to be evaluated in
6    accordance with the requisite burden of proof facing each party. *Id.* at 1078.

### III. DISCUSSION

PHP moves for partial summary judgment on the narrow question of Greenwich's duty to defend the *Ho* Action. PHP Mot., ECF 27. Greenwich, in turn, moves for summary judgment in its favor on all of PHP's claims on the ground that under the terms of the Policy, it owed neither a duty to defend PHP against the *Ho* Action nor a duty to indemnify PHP for the settlement of that action. Absent such duties, PHP cannot maintain its other claims for breach of contract, bad faith, and violation of the UCL. *See generally* Greenwich Mot., ECF 26. The Court turns first to the issue of Greenwich's duty to defend.

#### A. Duty to Defend (First Claim)

"[T]he duty to defend in California is extensive." *Hudson Ins. Co. v. Colony Ins. Co.*, 624 F.3d 1264, 1267 (9th Cir. 2010). An insurer's duty to defend arises when a third party "*potentially* seeks damages within the coverage of the policy." *Gray v. Zurich Ins. Co.*, 65 Cal. 2d 263, 275 (1966) (emphasis in original). "Implicit in this rule is the principle that the duty to defend is broader than the duty to indemnify; an insurer may owe a duty to defend its insured in an action in which no damages ultimately are awarded." *Horace Mann Ins. Co. v. Barbara B.*, 4 Cal. 4th 1076, 1081 (1993). Given the breadth of the duty to defend, an insured in an action seeking declaratory relief concerning a duty to defend "need only show that the underlying claim *may* fall within policy coverage; the insurer must prove it *cannot*." *Montrose Chem. Corp. v. Superior Court*, 6 Cal. 4th 287, 300 (1993) (emphasis in original); *see Hartford Cas. Ins. Co. v. Swift Distribution, Inc.*, 59 Cal. 4th 277, 288 (2014). If a potential cause of action is shown for one covered claim, the insurer has a duty to defend all claims asserted against the insured, "regardless of whether the other claims were covered under the policy. *Hudson Ins.*, 624 F.3d at 1267 (citing

*CNA Cas. of Cal. v. Seaboard Sur. Co.*, 176 Cal. App. 3d 598, 612 n.7 (1986)).

To determine whether a duty to defend exists, courts compare the terms of the policy with the allegations in the third party complaint, along with any extrinsic facts known to the insurer at the time of tender, to see whether "the allegations on the face of the third party complaint, and . . . extrinsic information available to [the insurer] at the time" indicate a potential for coverage. *Gunderson v. Fire Ins. Exchange*, 37 Cal. App. 4th 1106, 1114 (1995). As articulated by the California Supreme Court, "[i]f any facts stated or fairly inferable in the complaint, or otherwise known or discovered by the insurer, suggest a claim potentially covered by the policy, the insurer's duty to defend arises and is not extinguished until the insurer negates all facts suggesting potential coverage." *Scottsdale Ins. Co. v. MV Transp.*, 36 Cal. 4th 643, 655 (2005). "Any ambiguity in the insurance policy, including in the exclusions, must be resolved in favor of finding coverage." *Hudson Ins.*, 624 F.3d at 1267; *see also Montrose*, 6 Cal. 4th at 299-300. On the other hand, the duty to defend, though broad, cannot be founded in "speculat[ion] about extraneous 'facts' regarding potential liability or ways in which the third party claimant might amend its complaint at some future date." *Gunderson*, 37 Cal. App. 4th 1114. Rather, a court's determination of a duty to defend is guided by established principles of contract interpretation and the "nature and kinds of risks covered by the policy." *Hartford Cas. Ins.*, 59 Cal. 4th at 288 (quoting *Waller v. Truck Ins. Exchange, Inc.*, 11 Cal. 4th 1, 19 (1995)).

### i. The *Ho* Complaint Alleged a Potential for Coverage

Here, there can be no dispute that the Policy expressly excludes coverage for federal and state overtime law violations. *See* Policy at 5. PHP contends, however, that the *Ho* Action triggered Greenwich's duty to defend because the facts alleged in the underlying complaint reflected potentially covered "Wrongful Employment Acts" under the Policy. Specifically, PHP identifies three "Wrongful Employment Acts" that pertain to the underlying allegations: (1) breach of an employment contract; (2) harassment; and (3) discrimination. PHP Mot. 4-9; Policy at 4.

The first of these theories of coverage rests on the premise that every violation of the CLC is a breach of contract because every employment contract has as an implied obligation an

7

employer's compliance with the CLC.[3]  *Id.* at 5 (quoting *Harris v. Atl. Richfield Co.*, 14 Cal. App. 4th 70, 81 (1993) for proposition that "compliance with statutorily imposed duties is implied in law in every contract").  The theory is unavailing for several reasons, not least of which is PHP's inability to identify binding or even persuasive case authority holding that every oral employment contract in California carries with it the implied contractual obligation to comply with the CLC. *See Ho* Compl. ¶ 14 (alleging that PHP entered into "oral employment contracts" with employees).  More fundamentally, accepting PHP's argument would eviscerate the Policy's express exclusions and create a tempting moral hazard.  As explained by the Seventh Circuit in considering a similar policy that excluded coverage for overtime law violations:

> Insurance against a violation of an overtime law, whether federal or state, would enable the employer to refuse to pay overtime and then invoke coverage so that the cost of the overtime would come to rest on to the insurance company.  The employer would have violated the overtime law with impunity, unjustly enriching itself by the difference between the overtime wage for the hours in question and the straight wage.  No insurance company would knowingly write a policy that would enable the insured to trigger coverage any time it wanted a windfall.

*Farmers Auto. Ins. Ass'n v. St. Paul Mercury Ins. Co.*, 482 F.3d 976, 978-79 (7th Cir. 2007).  For those same reasons, no insurance company would knowingly write a policy that expressly excluded coverage for federal and state overtime law violations while at the same time extending coverage to breaches of implied employment contract terms in the manner that PHP suggests, allowing the insured to obtain coverage over that which was expressly excluded.

PHP's assertion that the complaint in the *Ho* Action suggested potential coverage for "harassment" and/or "discrimination" is more credible.  PHP argues that the allegations in the underlying complaint that "some of the employees are recent immigrants from Vietnam or are new graduates who are unsophisticated in employment and labor rights" and that PHP "purposefully [hired] recent immigrant workers to improperly take advantage of their lack of knowledge

---

[3] PHP did not allege breach of employment contract as a basis for Greenwich's duty to defend in its Complaint in this action.  Furthermore, the record reveals that PHP did not argue that discrimination was a basis for the duty in its correspondence with Greenwich.  As the parties have not brought to the Court's attention any case law indicating that an insured can waive grounds for coverage not previously identified, the Court proceeds to consider all of PHP's arguments on the merits.

1 regarding labor and employment rights" and "required that some employees change their
2 Vietnamese names to American names" reflect potential claims of discrimination. PHP Mot. 8-9;
3 PHP Opp. 4, ECF 29; *Ho* Compl. ¶¶ 14, 25. PHP also argues that the *Ho* complaint alleged facts
4 which could potentially give rise to a claim for "harassment," as that term is broadly defined in the
5 Policy, highlighting the allegations that PHP ran its business "as a taskmaster," that it "did not
6 provide a policy to relieve employees from their duties during their meal breaks" and that
7 "Employees who were not available to assist customers were later berated by management for
8 neglecting their duties." PHP Mot. 9; PHP Opp. 5; *Ho* Compl. at 1 and ¶ 19.

9 Greenwich responds that these allegations in the underlying complaint are insufficient to
10 suggest potential coverage for harassment and discrimination and that PHP instead improperly
11 relies upon facts in two pieces of extrinsic evidence—the EDD statement and the Joint CMS—to
12 support its claim for coverage. Greenwich Mot. 13; Greenwich Opp. 2-7, ECF 28. Greenwich's
13 argument largely focuses on the fact that the allegations identified by PHP are few and
14 introductory and that the words "harassment" and "discrimination" were never used in either the
15 *Ho* complaint or the Joint CMS. As PHP appropriately observes, these arguments are directed
16 more to the merits of any potential harassment or discrimination claim than to whether the facts
17 were sufficiently present to indicate a potential for coverage. PHP Mot. 9. Greenwich pledged to
18 defend PHP against "any covered Claim, *even if the allegations in such Claim are groundless*,
19 false or fraudulent." Policy at 6 (emphasis added). The Court is therefore not concerned with the
20 merits of any claim based on the allegations identified by PHP but only with whether PHP has
21 discharged its burden as the insured to show a *potential* for coverage under the Policy.
22 *Gunderson*, 37 Cal. App. 4th 1114. PHP has done so here.

23 As described above, the Policy defines "discrimination" to include "classification" on the
24 basis of race or national origin. Policy at 2. As the *Ho* plaintiffs made clear, their claims were
25 premised upon the misclassification of PHP employees to avoid paying them overtime. *Ho*
26 Compl. at 1 and ¶ 23. Moreover, PHP carried out such misclassification by purposefully hiring
27 "recent immigrant workers to improperly take advantage of their lack of knowledge regarding
28 labor and employment rights." *Id.* ¶ 14. At a minimum, these allegations suggest a potential

9

1  claim for discriminatory classification on the basis of national origin.[4] Coupled with the further
2  allegations that Vietnamese employees were required to change their names to American ones
3  selected by Tran, the facts alleged also suggest discrimination on the basis of race. Similarly, the
4  Policy defines "harassment" expansively to include "harassing conduct of a non-sexual nature
5  which creates a work environment . . . that interferes with an Employee's job performance, *or*
6  creates an intimidating, hostile or offensive working environment." Policy at 3 (emphasis added).
7  The allegations that Tran required certain Vietnamese employees to change their names to ones he
8  selected and that employees were berated by management for failing to always be available to
9  assist customers at the very least potentially qualify as "harassment" under this definition. *Ho*
10  Compl. ¶¶ 19, 25. Thus, this is not a situation, as Greenwich suggests, in which the insured is
11  attempting to obtain coverage based upon extrinsic facts relating to unpleaded claims. *See*
12  Greenwich Mot. 9-10. To the contrary, the factual allegations in the *Ho* complaint are alone
13  sufficient to demonstrate the possibility of coverage under the Policy.
14  Greenwich stresses in its papers that in deciding whether it had a duty to defend PHP, the
15  Court should take into account the fact that the *Ho* plaintiffs did not actually assert a cause of
16  action for discrimination or harassment either in their original or amended complaint. Greenwich
17  Reply 6, ECF 31. Greenwich argues that this was likely a strategic decision by the underlying
18  plaintiffs, since a claim for discrimination or harassment would have threatened their ability to
19  obtain class certification. *Id.* "There is no merit for this 'election' or 'conscious avoidance'
20  theory in the case law." *Hudson Ins.*, 624 F.3d at 1269. Where there are facts alleged in the third

---

[4] Greenwich suggested at oral argument that discriminatory classification is no more than a claim for failure to pay overtime, the latter of which is expressly excluded under the Policy. While the argument has some facial appeal, the Court agrees with the court in *Admiral Insurance Co. v. Kay Automotive Distributors, Inc.* in finding that "a wage and hour law exclusion of the kind at hand (absent very clear language to the contrary) serves only to exclude wrongdoing where the wrongful act has the effect of offloading labor costs to the insurer, and only to the degree that the claim rests on or involves violations of the wage and hour statutory scheme." ---F.3d---, No. CV 13-05100 DDP SSX, 2015 WL 400634, at *4 (C.D. Cal. Jan. 29, 2015). A claim that an employer purposefully exploited employees of a certain race or national origin in order to avoid paying them overtime goes beyond a mere offloading of labor costs. Furthermore, the Policy expressly provides coverage for discriminatory "classification" and accepting Greenwich's argument would render that coverage illusory. The Court can only enforce an insurance policy according to its terms.

party complaint that give rise to potential coverage, it does not matter "whether the claimed cause of action was omitted out of negligence or 'for strategic adversarial reasons.'" *Id.* at 1269 (quoting *CNA Cas.*, 176 Cal. App. 3d at 609. Instead, "it only matters whether the facts alleged or otherwise known by the insurer suggest potential liability or whether they do not." *Id.*

To be sure, the claims actually asserted in the underlying action involved violations of California labor law. However, Greenwich would have the Court construct a silo around those claims and conclude that no duty to defend could ever be triggered in such an action, regardless of the facts alleged in the complaint or the language of the Policy. Such a rigid application of the duty to defend is ultimately not persuasive and not mandated by the case law. *See Admiral Ins. Co. v. Kay Automotive Distributors, Inc.*, ---F.3d---, No. CV 13-05100 DDP SSX, 2015 WL 400634, at *3-4 (C.D. Cal. Jan. 29, 2015). The breadth of the duty to defend is such that the possibility the *Ho* plaintiffs could assert claims arising out of their factual allegations concerning PHP's discrimination against and harassment of its employees triggered Greenwich's duty to defend under the Policy until such time as it could be shown that there was no longer any potential for coverage. *Scottsdale Ins.*, 36 Cal. 4th at 655.

### ii. The Claims in the *Ho* Action Were Not All Expressly Excluded

Although the Court has found a duty to defend based upon potentially covered claims alleged in the *Ho* complaint, Greenwich may nevertheless relieve itself of the duty by providing "conclusive evidence demonstrating that [a policy] exclusion applies." *Atl. Mut. Ins. Co. v. J. Lamb, Inc.*, 100 Cal. App. 4th 1017, 1038-39 (2002). Here, Greenwich points to Section IV of the Policy, which excludes "Loss in connection with any Claim based upon, arising out of, directly or indirectly resulting from, in consequence of, or in any way involving . . . any actual or alleged violation of . . . the Fair Labor Standards Act ["FLSA"]. . . or similar provisions of any federal, state or local statutory law or common law." Policy at 5 (hereinafter "4(H) Exclusion"). Because it is undisputed that all of the *Ho* claims were based upon violations of the CLC, Greenwich asserts all of those claims are "similar" to the FLSA and therefore excluded from coverage under the Policy. Greenwich Mot. 4-5; Greenwich Opp. 10-14. As PHP points out, however, the *Ho*

plaintiffs also asserted a claim for violation of CLC § 226[5] and that at least one court has determined that there is no analogous or "similar" provision in the FLSA. PHP Mot. 13-14. As such, Greenwich cannot sustain its burden to show no possibility of coverage under the Policy. The Court agrees with PHP.

In California, "insurance coverage is 'interpreted broadly so as to afford the greatest possible protection to the insured, [whereas] . . . exclusionary clauses are interpreted narrowly against the insurer.'" *MacKinnon v. Truck Ins. Exch.*, 31 Cal. 4th 635, 648 (2003) (alteration in original) (quoting *White v. Western Title Ins. Co.*, 40 Cal. 3d 870, 881 (1985)) (internal quotation marks omitted). Applying these principles and relying on *California Dairies, Inc. v. RSUI Indem. Co.*, 617 F. Supp. 2d 1023 (E.D. Cal. 2009), PHP argues that the 4(H) Exclusion does not apply to the *Ho* plaintiffs' CLC § 226 claim. In *California Dairies*, the court considered a very similar exclusionary clause stating that the insurer would not be liable for any payment for the insured's "violation of any of the responsibilities, obligations or duties imposed by the . . . Fair Labor Standards Act . . . or *any similar provision* of federal state or local statutory law or common law . . . ." *Cal. Dairies*, 617 F. Supp. 2d at 1029 (emphasis added). There, the court conducted an exhaustive comparison of each CLC provision identified in the underlying third party complaint to provisions of the FLSA to arrive at the conclusion that § 226 claims were not barred by the exclusionary clause because "[n]either the FLSA nor its implementing regulations require such wage statements." *Id.* at 1046.

Greenwich (respectfully disagreeing with the *California Dairies* court) argues that § 226 claims *are* expressly excluded by the 4(H) Exclusion, asserting that the policy language bears more likeness to that at issue in *Payless Shoesource, Inc. v. Travelers Companies, Inc.*, 585 F.3d 1366 (10th Cir. 2009), *Admiral Insurance Co. v. Kay Automotive Distributors, Inc.*, and *New Hampshire Ball Bearings, Inc. v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa.*, No. CV 13-06114 DDP AGRX, 2014 WL 935120 (C.D. Cal. Mar. 10, 2014). *See* Greenwich Mot. 10-14;

---

[5] CLC § 226 requires that an employer furnish to employees, on a semimonthly basis, itemized wage statements setting forth nine categories of required information. CLC § 226(a). An employee injured by an employer's failure to comply with this provision is entitled to receive statutory penalties. *Id.* § 226(e).

12

Greenwich Opp. 10-14. All of these cases are distinguishable. First, the *Admiral Insurance* court expressly distinguished *California Dairies* on the ground that the policy before it excluded coverage over "any federal, state, local or foreign wage and hour laws, including, without limitation, the Fair Labor Standards Act," and not "*similar provisions*" of those laws, as was the case in *California Dairies*. *See Admiral Ins.*, 2015 WL 400634, at *2-3. Indeed, the *Admiral Insurance* court observed that "*California Dairies* shows, then, that when parties want to limit the exclusion to *provisions* of state law similar to FLSA, they can do so in plain language." *Id.* at *3 (emphasis added). PHP and Greenwich did so here. *See* Policy at 5. Second, the *New Hampshire Ball Bearings* court, by contrast, considered an exclusionary provision enumerating specific misconduct (and causes of action relating to that misconduct) that would be excluded from coverage, thereby rendering the reasoning in that case inapposite to the issue at hand. *See* 2014 WL 935120, at *5 and n.1. Finally, while the *Payless Court* confronted an exclusion with the "similar provisions" language, it considered only whether the wage and hour violations alleged under California law were "similar" to the FLSA and had no occasion to determine whether CLC § 226 could be considered a "similar provision" to anything in the FLSA. *See Payless,* 585 F.3d at 1373-74. The *California Dairies* court did have occasion to consider that precise question and this Court finds its conclusion persuasive. *See Cal. Dairies*, 617 F. Supp. 2d at 1046.

Because there was a potential for coverage alleged in the complaint and because not all of the claims asserted in the underlying *Ho* Action were expressly excluded, Greenwich had a duty to defend PHP in that action. The Court accordingly GRANTS PHP's motion for partial summary judgment on the duty to defend and DENIES Greenwich's motion on the same issue.

**B. Duty to Indemnify (Second Claim)**

Just because Greenwich had a duty to defend PHP, however, does not mean that it also has a duty to indemnify PHP against the damages incurred in the *Ho* Action. Greenwich here moves for summary judgment that it does not have a duty to indemnify.[6] Greenwich Mot. 5-10. PHP, in

---

[6] Greenwich's motion technically argues that it has neither a duty to defend nor a duty to indemnify. The same coverage arguments pertain to both duties though, as discussed above, Greenwich does not acknowledge that the two duties have decidedly different scopes.

13

opposition, largely addresses the issue of Greenwich's duty to defend and not its duty to indemnify. *See* PHP Opp. 4-9.

The duty to indemnify is narrower than the duty to defend and only "runs to claims that are actually covered, in light of the facts proved." *Buss v. Superior Court*, 16 Cal. 4th 35, 45 (1997); *Gunderson*, 37 Cal. App. 4th at 1113. In light of the fact that the *Ho* Action settled, PHP must thus prove that the settled claims were covered "Wrongful Employment Acts" within the definition of the Policy. This it cannot do because, as has already been discussed, the actual claims asserted and resolved in the *Ho* Action were limited to violations of the CLC. Per the state court's order entering final approval for class settlement in the *Ho* Action, the settlement and final judgment discharged PHP from the following claims by the named plaintiffs and class members:

> [A]ny and all claims, debts, liabilities, demands, obligations, guarantees, costs, expenses, attorneys' fees, penalties, damages, restitution, injunctive relief, or a remedy of any other type that is based on or arises out of the allegations the Lawsuit, including but not limited to such claims for (i) the alleged non-payment of overtime under the California Labor Code; (ii) the alleged non-payment of rest-period premiums under the California Labor Code, as well as the applicable Industrial Welfare Commission Wage Order; (iii) the alleged non-payment of meal-period premiums under the California Labor Code, as well as the applicable Industrial Welfare Commission Wage Order; (iv) the alleged failure to provide accurate information on pay stubs in violation of California Labor Code section 226; (v) the alleged failure to maintain payroll records in violation of California Labor Code section 1174; (vi) the alleged failure to pay vested vacation upon termination or quitting in violation of California Labor Code section 227.3; (vii) the alleged failure to timely pay wages in violation of California Labor Code sections 201, 202, and 203 (viii) the alleged unfair business practices under California Business and Professions Code section 17200 *et seq.* stemming from Defendant's alleged failure to pay meal-period premiums and alleged failure to reimburse for uniform-maintenance expenses; and (ix) the alleged civil-penalty liability under the California Labor Code section 2698 *et seq.* and the applicable Industrial Welfare Commission Wage Order.

Stipulation re Exhibit, Exh. 1 (State Court's "Order, Judgment, and Decree Granting Final Approval of Class Action Settlement" entered in the *Ho* Action) ¶ 3; *see also* J.A. Exh. D (Settlement Agreement and General Release) at 1.[7] By the terms of the Policy, Greenwich is

---

[7] The Settlement Agreement also states that PHP denies liability on the asserted claims. J.A. Exh. D at 2.

14

liable only for "Loss . . . arising from any Employment Claim . . . for a *Wrongful Employment Act*," and has no duty to indemnify PHP on claims that do not constitute "Wrongful Employment Acts." Policy at 1 (emphasis added). None of the claims identified in the state court's final order and the settlement agreement fall within any of the thirteen types of misconduct constituting "Wrongful Employment Acts" under the Policy.[8] *See id.* at 4. Thus, while the Court credits PHP's argument that claims brought under CLC § 226 are not excluded from coverage under the Policy's 4(H) Exclusion, the fact that the § 226 claim is not excluded does not necessarily mean that it is a covered "Wrongful Employment Act." Unless PHP can demonstrate that the settled claims were covered by the Policy, Greenwich is not contractually required to indemnify PHP for the amount of the settlement.

It is clear that the issues of harassment and discrimination against PHP employees— misconduct that would trigger coverage—were not raised in the *Ho* Action and that the ultimate settlement does not resolve any factual disputes concerning those charges. As such, Greenwich is not precluded from asserting that the claims ultimately resolved are not covered by the Policy. Moreover, as the Court has already determined, the only claim actually asserted in the *Ho* Action (as opposed to potentially asserted) that was not expressly excluded from coverage under the Policy was the claim under CLC § 226. Absent any evidence to suggest that the § 226 claim resolved as part of the underlying settlement was a covered "Wrongful Employment Act" within the definition of the Policy, however, Greenwich is entitled to judgment as a matter of law that it has no duty to indemnify PHP against the amount of the settlement in the *Ho* Action. PHP has put forth no such evidence and therefore fails to meet its non-moving burden to demonstrate a genuine dispute of material fact. Based on the stipulated record before the Court, there is thus no dispute that the settlement in the *Ho* Action does not give rise to a duty to indemnify under the Policy.

PHP in its own moving papers attempts to suggest that the Court should find that Greenwich is liable for defense *and* indemnity under the well-settled principle in California law

---

[8] As discussed above, the Court rejects PHP's assertion that the CLC claims are covered as "breach[es] of written or oral employment contract or implied employment contract." PHP Reply 6, ECF 32.

that "an insurer that wrongfully refuses to defend is liable on the judgment against the insured." *Gray*, 65 Cal. 2d at 279; *see* PHP Mot. 15 (citing *Amato v. Mercury Cas. Co.*, 53 Cal. App. 4th 825, 837-38 (1997) and *Pershing Park Villas Homeowners Ass'n v. United Pac. Ins. Co.*, 219 F.3d 895, 902 (9th Cir. 2000)). This argument is inapposite because it pertains more to the consequences of Greenwich's breach of the duty to defend than to the contractual matter of Greenwich's duty to indemnify.

Where the issue upon which insurance coverage turns is not raised in the underlying action, the insurer may assert non-coverage as a defense in the subsequent insurance dispute, as Greenwich did here. *Hogan v. Midland Nat'l Ins. Co.*, 3 Cal. 3d 553, 566 (1970). As a matter of contract interpretation, the Court agrees with Greenwich that it owes no duty to indemnify. Absent a duty to indemnify and bad faith, "[t]he general measure of damages for a breach of the duty to defend an insured, even if it is ultimately determined there is no coverage under the policy, are the costs and attorney fees expended by the insured defending the underlying action." *Emerald Bay Cmty. Ass'n v. Golden Eagle Ins. Corp.*, 130 Cal. App. 4th 1078, 1088-89 (2005); *see also Marie Y. v. Gen. Star Indem. Co.*, 110 Cal. App. 4th 928, 960-61 (2003) ("Where an insurer is liable for breach of contract to defend (but not indemnify) an insured, and where the insurer is not guilty of tortious bad faith, and where the insured in fact retains counsel to defend the claim, the proper measure of damages is the reasonable attorneys' fees and costs incurred by the insured in defense of the claim."). Of course, bad faith breach of a duty to defend may give rise to consequential damages that may include the amount of a judgment against the wrongfully abandoned insured. *See Amato,* 53 Cal. App. 4th at 834 (finding it appropriate to hold insurer liable for default judgment against insured as *consequential* damages for *tortious* breach of the duty to defend). As such, although PHP cannot prevail on its Second Claim for a determination that the Policy mandates a duty to indemnify in connection with the settlement in the *Ho* Action, PHP is not foreclosed from seeking the amount of the settlement as consequential damages in the event Greenwich is determined to have denied coverage in bad faith.

Greenwich's motion for summary judgment is accordingly GRANTED with respect to its duty to indemnify PHP against the amount of the settlement in the *Ho* Action.

### C. Breach of Contract (Third Claim), Breach of the Implied Covenant of Good Faith and Fair Dealing (Fourth Claim), and UCL (Fifth Claim)

Greenwich seeks summary judgment in its favor on PHP's claims for breach of contract, bad faith, and violation of the UCL on the sole ground that it had no duty to defend or indemnify. *See* Greenwich Notice of Motion 1, ECF 26; Greenwich Mot. 15. Because the Court has determined that Greenwich did have a duty to defend PHP, Greenwich's motion for summary judgment is DENIED with respect to those claims. Because the issue of bad faith has not been resolved at summary judgment, the Court expresses no opinion regarding whether, even in the absence of a duty to indemnify, PHP can recover the amount of the *Ho* Action settlement as consequential damages.

## IV. ORDER

For the foregoing reasons, IT IS HEREBY ORDERED that:

1. PHP's Motion for Partial Summary Judgment on its First Claim for a declaration that Greenwich had a duty to defend PHP against the *Ho* Action is GRANTED. Greenwich's cross-motion on the same claim is DENIED.

2. Greenwich's Motion for Summary Judgment is GRANTED on PHP's Second Claim for a declaration that Greenwich has a duty to indemnify PHP in connection with the settlement in the *Ho* Action.

3. Greenwich's Motion for Summary Judgment is DENIED on PHP's Third Claim for breach of contract, Fourth Claim for breach of the implied covenant of good faith and fair dealing, and Fifth Claim for violation of the UCL.

**IT IS SO ORDERED.**

Dated: August 12, 2015

_____
BETH LABSON FREEMAN
United States District Judge